**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CRUISE PLUS SERVICES AND SALES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PUERTO RICO PORTS AUTHORITY; and VECONINTER PUERTO RICO LLC,<br><br>Defendants. | CIVIL NO. 26-1722<br><br>IN ADMIRALTY<br>Fed. R. Civ. P. 9(h)<br><br>DECLARATORY JUDGMENT<br>28 U.S.C. §§ 2201-2202; Fed. R. Civ. P. 57 |

**COMPLAINT FOR DECLARATORY JUDGMENT IN ADMIRALTY**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff Cruise Plus Services and Sales, Inc. ("Cruise Plus"), through its undersigned counsel, and for its Complaint in admiralty for declaratory judgment against Defendants Puerto Rico Ports Authority ("PRPA") and Veconinter Puerto Rico LLC ("Veconinter") (together, "Defendants"), respectfully states, alleges, and prays as follows:

## I. NATURE OF THE ACTION

**1.** This is an admiralty and maritime claim for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Cruise Plus seeks a declaration that the claims of PRPA, and of its collection agent Veconinter, to recover from Cruise Plus the dockage, passenger and wharfage fees, port service charges, and related port dues listed in the statement of account that Veconinter issued on November 4, 2026 are extinguished by the one-year prescriptive term of Article 948 of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1910, together with all interest, penalties, and surcharges accessory to those claims.

**2.** Every invoice on Veconinter's statement bears a date between January 10, 2020 and February 20, 2024. The most recent invoice was more than two years old when Veconinter demanded

payment. Neither PRPA nor Veconinter has ever sued Cruise Plus to collect any of those invoices, and under Article 941 of the Code of Commerce, 10 L.P.R.A. § 1903, only a judicial action, an acknowledgment of the obligation by the debtor, or the renewal of the instrument on which the creditor's right is founded can interrupt the running of the term.

**3.** The controversy presents a question of law that turns on the dates appearing on Defendants' own statement of account, the text of a Puerto Rico statute, and the published terms of PRPA's tariff.

**4.** For purposes of Counts I, II, and III, Cruise Plus does not challenge the amount, correctness, or finality of any invoice; does not contend that any invoice was not presented to it on or about its invoice date; does not rely on any allegation that PRPA misapplied any payment; and does not seek judicial review of any administrative determination. The prescriptive bar applies even assuming, solely for purposes of those Counts, that every charge was properly assessed, presented, and deemed final under PRPA's tariff. Cruise Plus expressly reserves all other objections and defenses to the invoices.

## II. JURISDICTION AND VENUE

**5.** This Court has original jurisdiction under 28 U.S.C. § 1333(1) because this is a civil case of admiralty and maritime jurisdiction. Cruise Plus designates this action as an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

**6.** The Declaratory Judgment Act does not itself confer jurisdiction; jurisdiction exists because the coercive action that Defendants threaten, and that this declaratory action anticipates, is maritime. PRPA's invoices charge for the berthing of vessels at its wharves and piers, for the embarkation and disembarkation of cruise passengers from vessels berthed at those facilities, and for port services furnished to vessels entering the navigable waters of Puerto Rico. Charges for the use of

wharves by vessels engaged in navigation are maritime in nature and fall within the admiralty jurisdiction.

**7.** The claims against Veconinter concern the identical invoices and arise from the identical transactions and, therefore, fall within the Court's admiralty jurisdiction. In the alternative, the Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

**8.** An actual controversy exists within the meaning of 28 U.S.C. § 2201(a), as more fully alleged below, because Defendants have demanded that Cruise Plus pay $1,488,933.28 on account of the invoices, Cruise Plus has refused, Veconinter has threatened to commence judicial collection proceedings, and Defendants retain and assert the power to impose tariff sanctions on Cruise Plus, its principals and suretys for nonpayment without first resorting to any court.

**9.** This Court has personal jurisdiction over both Defendants. PRPA is a public corporation of the Commonwealth of Puerto Rico, and Veconinter is a limited liability company organized under the laws of Puerto Rico with its principal office in San Juan, Puerto Rico.

**10.** Venue is proper in this District. Under 28 U.S.C. § 1390(b), the general venue provisions of Chapter 87 of Title 28 do not govern civil actions in which the Court exercises admiralty jurisdiction under 28 U.S.C. § 1333, and an in personam admiralty action may be brought in any district in which the defendants may be served. Both Defendants reside and may be served in this District. Venue would in any event be proper under 28 U.S.C. § 1391(b)(1) and (b)(2), because both Defendants reside in this District and all of the events giving rise to the claims occurred in the Port of San Juan.

**11.** Venue in this Court is also consistent with Section 3.2.1 of PRPA Tariff M-1-8, which provides that "[j]urisdiction for any action whether in law or equity and whether founded in contract or in tort, brought by any user against the PRPA arise from or incidental to the user's operations on

property of the PRPA and/or its use of services or facilities, shall lie exclusively in the US District Courts or the Commonwealth of Puerto Rico Courts, as applicable."

**12.** No administrative proceeding concerning any of the invoices at issue is pending before PRPA, PRPA has not issued any administrative order or resolution concerning those invoices, and this action does not seek review of any administrative order or resolution.

**13.** PRPA is not an arm of the Commonwealth of Puerto Rico and does not enjoy Eleventh Amendment immunity from suit in this Court.

## III. THE PARTIES

**14.** Plaintiff Cruise Plus is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business at 1760 Ave. Fernandez Juncos, San Juan, Puerto Rico. Cruise Plus is engaged in the business of providing port agency and vessel agency services to owners and operators of cruise vessels calling at the ports of Puerto Rico.

**15.** Defendant PRPA is a public corporation created by Act No. 125 of May 7, 1942, as amended, known as the Puerto Rico Ports Authority Act, 23 L.P.R.A. § 331 *et seq.*, with capacity to sue and be sued. PRPA owns, operates, and administers the maritime facilities in the Port of San Juan at which the services reflected in the invoices at issue were rendered. PRPA's principal office is located at 64 C. Lindbergh, San Juan, Puerto Rico.

**16.** Defendant Veconinter is a for-profit domestic limited liability company organized under the laws of the Commonwealth of Puerto Rico. Veconinter's principal office is 1225 Ponce de León Avenue, Suite GF-2A-2, VIG Tower, San Juan, Puerto Rico 00907.

**17.** Upon information and belief, Veconinter is part of a group of affiliated companies doing business under the Veconinter name that provides outsourced management and collection of demurrage, detention, and accounts receivable to ocean carriers, terminal operators, and port authorities.

**18.** Upon information and belief, Veconinter acts as PRPA's agent for the management and collection of invoices that PRPA claims are overdue. To the extent PRPA has transferred or assigned to Veconinter any interest in those invoices, Veconinter holds that interest as PRPA's assignee. In either capacity, Veconinter asserts the right to demand and receive payment from Cruise Plus of the invoices at issue in this action.

## IV. FACTUAL ALLEGATIONS

### A. PRPA's Tariff and the Port Charges Imposed on Vessel Agents

**19.** The Puerto Rico Ports Authority Act authorizes PRPA to fix, alter, charge, and collect rates, fees, and other charges for the use of its facilities and for the services it furnishes.

**20.** PRPA exercises that authority through regulations, commonly referred to in the maritime industry as "tariffs," which are filed with the Puerto Rico Department of State and which PRPA contends are binding on all users of the maritime facilities it administers.

**21.** PRPA Tariff M-1-8 (the "Tariff") became effective on January 21, 2017, and was in force on each of the invoice dates at issue in this action. The Tariff is a public regulation of which the Court may take judicial notice.

**22.** Section 1.2 of the Tariff defines "Agent," including a Ship Agent or Vessel Agent, as a "[p]erson or Company authorized to represent the Vessel Owner and/or Captain and/or the Ship Owner and/or Captain at any of the PRPA facilities in which a Maritime Operation is conducted and who is responsible for the accomplishment of the Terms and Conditions of this Tariff, including the payment of Charges assessed as disposed in this Tariff for the use of facilities as port services and docking."

**23.** Section 3.2 of the Tariff provides that "[t]he use of any PRPA facilities, such as Harbors, Docks, Landing Places, Marine Terminals, Quays, Transit Areas and Wharves, shall

constitute a consent by the interested parties to abide by all terms, conditions, rules and regulations, and to pay all Charges specified in this document."

**24.** Section 1.23 of the Tariff defines "Dockage" as "[t]he Charge assessed against a Vessel for berthing at, mooring or making fast to a Wharf, Pier or bulkhead structure or for mooring to another Vessel so berthed."

**25.** Section 1.55 of the Tariff defines "Port Service Charges" as the "[c]harge assessed against a Vessel for entering to PRPA ports (whether or not it docks anchors, loads or unloads cargo) and receiving thereby the benefits of general services and regulation, which promote commerce and navigation."

**26.** Section 14.3 of the Tariff imposes a per-passenger "Passenger Service Fee and/or Wharfage Fee" on cruise vessels which "berth at or; moor at PRPA facilities or; anchors at the harbor for embarking or disembarking purposes."

**27.** Each of the foregoing charges is assessed against a vessel, or in respect of a vessel, by reason of its entry into a Puerto Rico port, its berthing at a PRPA wharf or pier, or the embarkation and disembarkation of its passengers at a PRPA facility.

**28.** Section 13.2 of the Tariff provides that "[a]ll invoices are due and payable upon presentation unless other arrangements are made with PRPA," and that, for credit customers, "the moment the invoice is uploaded to the DSMS will be deemed as the presentation date and time."

**29.** Section 13.2 of the Tariff further requires credit customers to "pay the invoice in full within thirty (30) Calendar Days from date receipt of invoice," provides that "[a]n invoice shall be considered past due commencing on the sixteenth (16) Calendar Day from the invoice date," and imposes "[a] .0493% daily interest rate fee or 18% annual interest rate fee" while the invoice remains outstanding.

**30.** Section 13.3 of the Tariff requires that "[a]ll claims related to maritime operations and/or port charges shall be filed within thirty (30) calendar days from the date of the invoice," and provides that "[o]nce the sixty (60) calendar days period to file a claim expires, the invoice will be deemed correct and final for all intended purposes."

**31.** Accordingly, under PRPA's own Tariff, each invoice at issue was due upon presentation, was past due no later than its sixteenth day, and was deemed "correct and final for all intended purposes" no later than sixty calendar days after its date.

**32.** Section 13.3 of the Tariff requires that a claim include the "reason for the complaint and/or type of error," supporting evidence, and a reference to the maritime operation, "including, but not limited to (Vessel, period, invoice number and so forth.)" The only consequence of a successful claim that Section 13.3 provides is that "[s]upplementary invoices shall be issued as a result of a claim resolution, when such claim is granted by PRPA."

**33.** Section 13.3 of the Tariff does not provide for a hearing, an adjudicative proceeding, reconsideration, or judicial review, and neither Section 13.3 nor any other provision of the Tariff establishes a procedure by which a user may raise, or PRPA may determine, whether PRPA's action to collect an invoice has prescribed.

**34.** The thirty-day and sixty-day periods of Section 13.3 of the Tariff expire long before the one-year term of Article 948 of the Puerto Rico Code of Commerce runs. As to every invoice listed on the Statement described below, the Section 13.3 period had expired before any prescription defense could have arisen.

**35.** The Tariff does not contain any provision stating that the finality of an invoice under Section 13.3 extends, suspends, interrupts, or otherwise affects the time within which PRPA must sue to collect the invoice, and does not contain any provision stating that an invoice becomes a different kind of obligation upon becoming final.

**36.** Each PRPA invoice, as issued, states a fixed amount computed by applying the rates set forth in the Tariff and identifies the vessel, the invoice date, and the Tariff charges assessed, and contains a certification by PRPA that the amounts invoiced are final and correct.

**37.** Section 13.2 of the Tariff provides that account balances due over ninety calendar days "are subject to revocation of credit privileges, collection of outstanding balance from pledge and/or guarantees and docking permit request denial and/or cancellation, in accordance with section 6.4.2."

**38.** Section 6.4.1 of the Tariff authorizes PRPA's Executive Director, its Chief of Maritime Operations, or their authorized representative to "detain through formal notice, any outgoing Vessel until the Port Service Charges payment has been made to PRPA," and Section 8.10 authorizes the same officers to detain any outgoing vessel until wharfage has been paid.

**39.** Section 6.4.2 of the Tariff grants PRPA "discretion in denying the approval of a Docking Permit Request and/or the renewal of a docking permit" based on, among other things, "payment history" and a "delinquent account balance over ninety days (90) due."

**40.** Section 13.4 of the Tariff requires credit customers to submit "a pledge or guarantee" which "shall be used against any delinquent account balance," and authorizes PRPA, when a delinquent balance exists, to "cancel credit privileges or request the replenishment of the pledge or guarantee."

**41.** Section 13.4 of the Tariff further provides that "[c]redit privileges are only extended for the purposes of deferral the invoice payment, without being charged for penalties or interests within the period granted, according to section 13.2 of this tariff."

**42.** Section 3.3.4 of the Tariff requires maritime customers to furnish an indemnity bond or letter of credit "insuring the PRPA against loss of any funds and/or indemnifying the PRPA in full for the payment of bills that accrue as a result of dockage, port service fees, cargo and passenger

wharfage, water sales, storage, rentals leases, warehousing, Demurrage, electricity and any other Charges that may accrue for services rendered by the PRPA."

**43.** None of the sanctions described in Sections 6.4.1, 6.4.2, 8.10, 13.2, and 13.4 of the Tariff requires PRPA to file a judicial action or obtain a judgment before imposing them.

**B. Cruise Plus's Role as Vessel Agent**

**44.** Cruise Plus acts as vessel agent at the Port of San Juan for owners and operators of cruise vessels, and in that capacity PRPA has issued to Cruise Plus invoices for charges assessed under the Tariff in respect of vessels represented by Cruise Plus.

**45.** Cruise Plus is a credit customer of PRPA under Section 13.4 of the Tariff and has furnished to PRPA a bond to secure the payment of Tariff charges.

**46.** Cruise Plus has not executed any credit agreement, loan agreement, promissory note, or other contract with PRPA governing the payment of Tariff charges. The only document Cruise Plus executed in connection with its credit privileges is a credit application which does not contain any provision concerning the time within which PRPA may sue to collect Tariff charges and does not refer to any of the invoices listed on the Statement.

**47.** The bond furnished under Sections 3.3.4 and 13.4 of the Tariff is an obligation of the surety to PRPA. Neither the bond nor any renewal, rider, or replacement of it identifies, recites, or acknowledges any of the invoices listed on the Statement or any amount owed on them.

**48.** Tariff M-1-8 took effect on January 21, 2017, nearly three years before the earliest invoice listed on the Statement. PRPA has not adopted any tariff replacing Tariff M-1-8 since January 10, 2020.

**49.** Cruise Plus is enrolled in PRPA's Dock and Ship Management System ("DSMS"). For purposes of this action, Cruise Plus accepts that each invoice listed on the Statement was uploaded to DSMS and thereby presented to Cruise Plus on or about its invoice date.

**50.** Each invoice listed on the Statement consists exclusively of dockage under Section 7 of the Tariff, passenger service or wharfage fees under Section 14.3 of the Tariff, port service charges under Section 6 of the Tariff, (and water or other vessel services under Section 9 of the Tariff), each assessed in respect of a cruise vessel represented by Cruise Plus.

**51.** Cruise Plus does not hold any funds paid by its principals for the purpose of paying the charges listed on the Statement.

**52.** Cruise Plus currently represents vessels that call at the Port of San Juan on a regular schedule, and it submits docking permit requests to PRPA on behalf of those principals.

### C. PRPA Retains Veconinter to Collect Its Overdue Invoices

**53.** Upon information and belief, effective on or about March 15, 2026, PRPA retained Veconinter to take over the management of PRPA's collection process and its accounts receivable, including invoices that PRPA claims are overdue.

**54.** On or about August 4, 2026, the Veconinter group publicly announced that it would "take over the management of the collection process" for PRPA and would provide "accounts receivable management" for "processes associated with overdue invoices."

### D. Veconinter's Statement of Account

**55.** On November 4, 2026, Veconinter delivered to Cruise Plus, by electronic mail, a statement of account captioned "Outstanding Accounts 11/04/2026 Client: (9210) CRUISE PLUS SERVICES (PR)" demanding payment of invoices issued by PRPA (the "Statement"). A true and correct copy of the Statement is attached as **Exhibit 1**.

**56.** The Statement is addressed to the account of "(9210) CRUISE PLUS SERVICES (PR)," identifies the client on whose behalf Veconinter is collecting by the code "PRPUS," and identifies each PRPA invoice by its PRPA invoice number, which appears in the columns headed "Reference" and "BL," together with a Veconinter document number beginning with the letter "W."

**57.** The Statement lists seventy-six (76) PRPA invoices.

**58.** The Statement lists the status of every one of the seventy-six invoices as "In Management."

**59.** The earliest invoice date listed on the Statement is January 10, 2020.

**60.** The most recent invoice date listed on the Statement is February 20, 2024.

**61.** Of the seventy-six invoices listed on the Statement, eight bear dates in 2020, eight bear dates in 2021, fifty-seven bear dates in 2022, one bears a date in 2023, and two bear dates in 2024. No invoice listed on the Statement bears a date after February 20, 2024.

**62.** For each invoice, the Statement lists a number of days "Overdue." Those figures are computed as of November 4, 2026; for example, the Statement lists the invoices dated January 10, 2020 as 2,490 days overdue and the invoice dated February 20, 2024 as 988 days overdue.

**63.** The Statement lists a total amount invoiced of $1,054,892.60, total interest of $485,470.27, and a "Total Pending" balance of $1,488,933.28.

**64.** For seventy-four of the seventy-six invoices listed on the Statement, the "Total Pending" amount equals the sum of the amount invoiced and the interest claimed. The Statement therefore reflects no payment or credit applied to any of those seventy-four invoices.

**65.** The Statement reflects a payment or credit on only two invoices: PRPA invoice M-21-202121694 (Veconinter document W106743), dated October 12, 2021, on which the Statement reflects a payment or credit of $37,184.62; and PRPA invoice M-22-202211611 (Veconinter document W106744), dated April 19, 2022, on which the Statement reflects a payment or credit of $14,244.97. The balances the Statement lists for those two invoices are identical to the balances Veconinter listed for them in April 2026, and the Statement reflects no payment or credit applied to any invoice after that date.

**66.** Each payment or credit reflected on those two invoices was made or applied more than one year before the filing of this Complaint. No such payment or credit was accompanied by any writing referring to any other invoice listed on the Statement or acknowledging any balance owed on the invoice to which it was applied.

**67.** The Statement is the last of nine statements of account that Veconinter has delivered to Cruise Plus since April 8, 2026, each listing the same seventy-six invoices.

**68.** **Schedule A** to this Complaint, which is incorporated by reference, reproduces for each invoice listed on the Statement its PRPA invoice number, the corresponding Veconinter document number, its invoice date, and the amounts the Statement lists, and identifies for each invoice (i) the date on which it became "correct and final for all intended purposes" under Section 13.3 of the Tariff, sixty calendar days after its invoice date, and (ii) the date one year after that date.

**69.** The latest date in the final column of Schedule A is April 20, 2025. Accordingly, even measured from the date on which each invoice became final under Section 13.3 of the Tariff, one year had elapsed as to every invoice listed on the Statement more than a year before the filing of this Complaint.

**70.** The services and use of facilities for which each invoice listed on the Statement was issued were rendered on or before the date of that invoice.

**E. Veconinter's Escalating Collection Notices and Express Threats of Judicial Action**

**71.** Each of those nine statements of account accompanied a written collection notice that Veconinter sent to Cruise Plus by electronic mail and copied to a Veconinter collections or legal department address. The notices are dated April 8, May 4, May 19, June 9, July 10, August 11, September 8, October 14, and November 4, 2026.

**72.** In the first notice, dated April 8, 2026, Veconinter informed Cruise Plus that it "has been retained by the Autoridad de los Puertos de Puerto Rico as a third-party collections agency

regarding an outstanding balance in the amount of USD 1,437,975.38," and that it was "authorized to contact you to discuss this matter and obtain resolution." The statement of account enclosed with that notice listed the same seventy-six invoices, the same total amount invoiced of $1,054,892.60, and total interest of $434,512.37.

**73.** In the notice dated May 4, 2026, Veconinter wrote that the account was 2,321 days past due, that its file showed that Cruise Plus had been unable or had refused to pay, and that, in its capacity as collection agent for PRPA, it asked Cruise Plus to pay or to submit a payment proposal in order to avoid the interruption of service by PRPA.

**74.** The notice dated May 19, 2026 is captioned "PRIMERA NOTIFICACIÓN DE COBRO LEGAL," first legal collection notice, and issues from Veconinter's "Departamento de Cobranza Legal," its legal collection department. It states that Cruise Plus's account, then $1,448,534.33, "ha sido remitida al Departamento Legal de Veconinter para acciones de cobro," that is, has been referred to Veconinter's legal department for collection actions. It adds that the debt was 2,342 days past due and that Veconinter stood ready to assist in paying it "a fin de evitar la interrupción del servicio y las molestias derivadas del ejercicio de acciones legales de cobro," in order to avoid the interruption of service and the inconvenience arising from the exercise of legal collection actions.

**75.** The notice dated June 9, 2026 is captioned "SEGUNDA NOTIFICACIÓN DE COBRO PRE LEGAL," second pre-legal collection notice. It states that the account, then $1,453,097.26, remained unpaid, that Veconinter would regret compromising Cruise Plus's credit record "con una reclamación de carácter judicial," with a judicial claim, and that Cruise Plus should contact Veconinter "para suspender el avance del proceso de cobranza legal," to halt the advance of the legal collection process.

**76.** The notice dated July 10, 2026 is captioned "ÚLTIMA NOTIFICACIÓN DE COBRO PRE-LEGAL," last pre-legal collection notice, and states that the delinquent account then

stood at $1,460,580.99. It recites that Veconinter had demanded payment on repeated occasions, that it had notified the account through three legal collection notices, and that Cruise Plus had refused to pay or had not responded. It asserts that nonpayment breaches "el contrato de transporte marítimo celebrado con" PRPA, the maritime transportation contract entered into with PRPA, and that the breach carries three consequences: that the debt accrues moratory interest from the date payment became due; that "en caso de inicio de acciones judiciales, deberá pagar los correspondientes honorarios profesionales de abogados, más las costas del proceso," that if judicial actions are commenced Cruise Plus must pay the corresponding attorneys' fees and the costs of the proceeding; and that nonpayment will create a negative credit record for its future commercial transactions with shipping lines. The notice closes by stating that, absent an immediate amicable payment agreement, Veconinter will find itself compelled "a reportar su caso a nuestro cliente con el fin de iniciar acciones judiciales de cobro por ante los tribunales competentes," to report the case to its client in order to commence judicial collection actions before the competent courts.

**77.** The notice dated August 11, 2026 is captioned "NOTIFICACIÓN FINAL," final notice, and again issues from Veconinter's legal collection department.

**78.** In the notice dated September 8, 2026, Veconinter wrote that the invoices "permanecen abiertas y vigentes" in Cruise Plus's account, remain open and in force, and that, if it received no formal dispute within that month, "consideraremos los cargos como aceptados," it would consider the charges accepted.

**79.** In the notice dated October 14, 2026, Veconinter wrote that a delay in payment "podría afectarlo en futuras liberaciones," could affect Cruise Plus in future releases.

**80.** In the Statement itself, Veconinter wrote that, as consignee, it is Cruise Plus's responsibility to attend to and regularize these obligations, and that a failure to respond or to address the debt "podría generar consecuencias desfavorables en su relación comercial con la línea naviera, así

como la posible aplicación de acciones legales para la recuperación de los montos adeudados," could produce unfavorable consequences in its commercial relationship with the shipping line, as well as the possible application of legal actions to recover the amounts owed.

**81.** Cruise Plus did not respond to any of the nine notices, made no payment on any invoice listed on the Statement, and neither acknowledged any obligation nor proposed any payment arrangement. Its silence is not an acknowledgment of the obligation within the meaning of Article 941 of the Code of Commerce, 10 L.P.R.A. § 1903, and Veconinter's statement that it would deem the charges accepted in the absence of a formal dispute cannot supply the acknowledgment that Article 941 requires.

**82.** The balance Veconinter demands has risen from $1,437,975.38 on April 8, 2026 to $1,488,933.28 on November 4, 2026, an increase of $50,957.90 in under seven months. The entire increase is interest. The principal invoiced has remained $1,054,892.60 throughout.

**83.** Notwithstanding nine demands in seven months, three of them styled as legal or final collection notices, and the express threat of judicial collection proceedings, neither PRPA nor Veconinter has commenced any action against Cruise Plus. The one-year term of Article 948 of the Code of Commerce had expired as to every invoice listed on the Statement before Veconinter sent its first notice on April 8, 2026.

**F. No Event Has Interrupted the Prescriptive Term**

**84.** PRPA has not filed a lawsuit or any other judicial proceeding against Cruise Plus to collect any invoice listed on the Statement.

**85.** Veconinter has not filed a lawsuit or any other judicial proceeding against Cruise Plus to collect any invoice listed on the Statement.

**86.** Neither PRPA nor Veconinter has served on Cruise Plus any judicial demand or other judicial interpellation for payment of any invoice listed on the Statement.

**87.** The Statement, the eight earlier notices described above, and any other written or oral request for payment of the invoices listed on the Statement made by PRPA or Veconinter, are extrajudicial demands.

**88.** Cruise Plus has not executed any promissory note, payment plan, settlement agreement, acknowledgment of debt, or other instrument recognizing an obligation to pay the invoices listed on the Statement.

**89.** Cruise Plus has not made any payment on account of any invoice listed on the Statement within the one year preceding the filing of this Complaint.

**90.** Cruise Plus has not acknowledged, in writing or otherwise, any obligation to pay the invoices listed on the Statement, and has not renounced the prescription that has run in its favor.

**91.** The charges reflected in the invoices listed on the Statement were assessed under the Tariff. PRPA's claims to those charges are not founded on any separate written instrument executed by Cruise Plus, and no instrument on which those claims are founded has been renewed.

**92.** PRPA has not commenced any administrative proceeding against Cruise Plus concerning any invoice listed on the Statement, and has not issued to Cruise Plus any administrative order, resolution, or determination concerning any such invoice.

**93.** Neither PRPA nor Veconinter has arrested or attached any vessel, asserted a lien against any vessel or cargo in any judicial proceeding, detained any vessel, drawn on any bond or guarantee, or revoked any credit privilege on account of any invoice listed on the Statement.

**94.** The Statement demands payment of the invoices listed on it from Cruise Plus in its capacity as vessel agent. Neither PRPA nor Veconinter has demanded payment of those invoices from any vessel, vessel owner, or vessel operator.

**G. PRPA's Course of Dealing and the Absence of Any Conduct by Cruise Plus Inducing Delay**

**95.** Throughout the period from January 2020 to the present, PRPA continued to approve docking permit requests submitted by Cruise Plus, continued to extend credit privileges to Cruise Plus, and continued to invoice Cruise Plus for Tariff charges on vessels represented by Cruise Plus.

**96.** At all relevant times, PRPA possessed in its own records, including DSMS, all information necessary to sue Cruise Plus on each invoice listed on the Statement, including the invoice, the vessel, the charges, the amount, and the identity and address of Cruise Plus.

**97.** At all relevant times, PRPA was free to file suit against Cruise Plus on any invoice listed on the Statement.

**98.** Cruise Plus never asked PRPA or Veconinter to refrain from, or to delay, filing suit on any invoice listed on the Statement; never promised to pay any such invoice; never represented that it would not assert prescription; and never entered into any agreement to suspend or extend the time within which PRPA could sue.

**99.** Cruise Plus never engaged in settlement negotiations with PRPA or Veconinter concerning the invoices listed on the Statement, and no representative of PRPA ever informed Cruise Plus that PRPA was refraining from suit in reliance on any statement or conduct of Cruise Plus.

**H. The Actual Controversy and the Injury to Cruise Plus**

**100.** Defendants continue to assert that Cruise Plus owes them $1,488,933.28 on account of the invoices listed on the Statement, and they continue to add interest to those invoices on each successive statement of account. Section 13.2 of the Tariff fixes that interest at a daily rate of .0493% and an annual rate of eighteen percent.

**101.** Cruise Plus disputes that it owes any sum on account of the invoices listed on the Statement and has refused to pay them.

**102.** Veconinter has told Cruise Plus in writing that its account has been referred to Veconinter's legal department for collection actions, that Cruise Plus will be liable for attorneys' fees and the costs of the proceeding if judicial actions are commenced, and that Veconinter will report the matter to PRPA so that judicial collection actions may be commenced before the competent courts. The coercive action that this declaratory action anticipates is therefore not hypothetical. Defendants have announced it.

**103.** Because the invoices listed on the Statement are reflected on Defendants' records as balances more than ninety days past due, PRPA asserts the power under Sections 6.4.1, 6.4.2, 8.10, 13.2, and 13.4 of the Tariff to revoke Cruise Plus's credit privileges, to collect the claimed balance from Cruise Plus's pledge or guarantee, to deny or cancel docking permits requested by Cruise Plus on behalf of its principals, and to detain outgoing vessels represented by Cruise Plus, all without first filing suit.

**104.** The detention of a cruise vessel or the denial of a docking permit would disrupt the itineraries of vessels carrying thousands of passengers, would expose Cruise Plus to claims by its principals, and would cause Cruise Plus immediate and irreparable commercial harm.

**105.** The continued assertion of the claimed balance impairs Cruise Plus's credit standing, must be disclosed by Cruise Plus to its auditors and lenders as a contingent liability, and places at risk the surety or guarantee that secures Cruise Plus's obligations under the Tariff.

**106.** As a vessel agent, Cruise Plus pays port charges on behalf of its principals, who must then reimburse Cruise Plus. Charges first demanded years after the underlying vessel calls cannot, as a practical matter, be passed on to principals, several of which may have, for example, merged, ceased operations, or no longer call at Puerto Rico ports, so that Defendants' assertion of stale charges exposes Cruise Plus to losses it cannot recover.

**107.** Because PRPA may impose the foregoing sanctions without filing suit, Cruise Plus cannot protect itself by waiting to plead prescription as a defense in a collection action that Defendants may never file. A declaratory judgment is the only means by which Cruise Plus can obtain an adjudication of its rights before those sanctions are imposed and before further interest accrues.

**108.** The dispute between Cruise Plus and Defendants regarding the enforceability of the invoices listed on the Statement is real, immediate, definite, and concrete, touches the legal relations of parties having adverse legal interests, and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**109.** A declaratory judgment will terminate the controversy between the parties, will permit Cruise Plus to remove the claimed balance from its books and to release or reduce the security it has furnished to PRPA, and will prevent the continued accrual of interest and surcharges on time-barred charges.

**COUNT I**
**DECLARATORY JUDGMENT: DEFENDANTS' CLAIMS ARE PRESCRIBED UNDER ARTICLE 948 OF THE PUERTO RICO CODE OF COMMERCE**
**(Against PRPA and Veconinter)**

**110.** Cruise Plus repeats and incorporates by reference the allegations of paragraphs 1 through 109 as if fully set forth herein.

**111.** Article 948 of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1910, provides in relevant part:

> "The following shall prescribe after one year: . . . (3) Actions to recover for the expenses of the judicial sale of vessels, cargoes, or goods, transported by sea or by land, as well as those arising from their custody, deposit, and preservation, and **the navigation and port expenses**, pilotage, rescues, assistance, and salvages, **the period to be counted from the time the expenses were incurred** and the assistance given, or from the conclusion of the proceedings, if any should have been instituted on the case."]

**112.** The dockage, passenger and wharfage fees, and port service charges listed on the Statement are " navigation and port expenses," within the meaning of Article 948(3), because each is a charge imposed on or in respect of a vessel by the port authority for the vessel's entry into, use of, or berthing at the port.

**113.** To the extent any invoice listed on the Statement includes charges for water, provisions, or other services or supplies furnished to vessels, the action to recover those charges is likewise subject to the one-year term of Article 948, whether under subsection (3) or under subsection (1), which governs actions arising from " from services, works, provisions, and furnishing of goods or money for the construction, repair, equipment, or provisioning of vessels."

**114.** The one-year term of Article 948(3) runs from the time the charges were incurred. Each charge listed on the Statement was incurred on or before its invoice date, became due upon presentation under Section 13.2 of the Tariff, and became "correct and final for all intended purposes" under Section 13.3 of the Tariff no later than sixty days after its invoice date. Under any of those measures, the one-year term for every invoice listed on the Statement expired no later than April 20, 2025.

**115.** Under the Code of Commerce, the terms fixed for the exercise of commercial actions are "cannot be extended and are without recourse," that is, they are strict and not subject to restoration. 10 L.P.R.A. § 1901.

**116.** Article 941 of the Code of Commerce, 10 L.P.R.A. § 1903, provides that commercial prescription "se shall be interrupted by suit or any judicial proceeding brought against the debtor, by the acknowledgment of the obligations, or by the renewal of the instrument on which the right of the creditor is based."

**117.** Unlike the Puerto Rico Civil Code, the Code of Commerce permits the interruption of prescription only through those three means, and extrajudicial demands for payment do not interrupt commercial prescription. *Pacheco v. Nat'l W. Life Ins. Co.*, 122 D.P.R. 55 (1988).

**118.** No suit or other judicial demand, no acknowledgment of the obligation, and no renewal of any instrument has interrupted the prescriptive term as to any invoice listed on the Statement. The Statement, and every other demand for payment made by PRPA or Veconinter, is an extrajudicial demand that did not interrupt the term.

**119.** PRPA's retention of Veconinter as its collection agent, and any transfer or assignment of the invoices to Veconinter, did not interrupt the prescriptive term and did not revive any claim that had already prescribed.

**120.** The finality of the invoices under Section 13.3 of the Tariff, Cruise Plus's status as a credit customer, the furnishing or renewal of any bond or guarantee, the presentation of invoices through DSMS, and Cruise Plus's decision not to file any claim under Section 13.3 of the Tariff are not a judicial demand, an acknowledgment by Cruise Plus of any obligation, or a renewal of a document on which PRPA's right is founded, and none of them interrupted the prescriptive term.

**121.** The one-year term of Article 948 applies to Defendants' claims whether they are asserted in personam against Cruise Plus as vessel agent or in rem against any vessel.

**122.** Article 948 governs Defendants' claims notwithstanding their maritime character. Congress has placed the harbor areas and navigable waters in and around Puerto Rico under the control of the Government of Puerto Rico, 48 U.S.C. § 749, and the general maritime law applies in those waters only to the extent it has not been rendered inapplicable by inconsistent Puerto Rico legislation. *Fonseca v. Prann*, 282 F.2d 153 (1st Cir. 1960); *Guerrido v. Alcoa S.S. Co.*, 234 F.2d 349, 355-56 (1st Cir. 1956).

**123.** Veconinter, as PRPA's collection agent, has no greater right to collect the invoices than PRPA, its principal. To the extent Veconinter holds any interest in the invoices as assignee, it took that interest subject to every defense that Cruise Plus could assert against PRPA, including prescription.

**124.** Interest, penalties, surcharges, and collection costs claimed on account of the invoices listed on the Statement are accessory to the principal charges and are extinguished together with them.

**125.** Cruise Plus is therefore entitled to a declaration that the actions of PRPA and Veconinter to recover the charges listed on the Statement, and all interest, penalties, surcharges, and collection costs accessory to them, are prescribed under Article 948 of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1910, and may not be enforced against Cruise Plus.

## COUNT II
## DECLARATORY JUDGMENT: THE PRESCRIBED CHARGES MAY NOT BE ENFORCED THROUGH TARIFF SANCTIONS OR OTHER COLLECTION MEASURES
## (Against PRPA and Veconinter)

**126.** Cruise Plus repeats and incorporates by reference the allegations of paragraphs 1 through 125 as if fully set forth herein.

**127.** The prescription of an action under the Code of Commerce extinguishes the creditor's right to compel payment of the obligation.

**128.** The sanctions authorized by Sections 6.4.1, 6.4.2, 8.10, 13.2, and 13.4 of the Tariff are mechanisms for compelling the payment of Tariff charges.

**129.** Permitting PRPA or Veconinter to compel payment of prescribed charges through vessel detention, denial or cancellation of docking permits, revocation of credit privileges, or recourse against Cruise Plus's pledge, bond, or guarantee would accomplish indirectly what Article 948 forbids them to accomplish by action, and would render the statutory term meaningless.

**130.** Cruise Plus is therefore entitled to a declaration that PRPA and Veconinter may not rely on the invoices listed on the Statement, or on any interest, penalty, or surcharge accessory to them, as a basis for treating Cruise Plus as a delinquent account, for detaining any vessel represented by Cruise Plus, for denying or cancelling any docking permit requested by Cruise Plus, for revoking Cruise Plus's credit privileges, for demanding the replenishment of or collecting against any pledge, bond, or guarantee furnished by Cruise Plus, or for any other collection measure.

## COUNT III
## IN THE ALTERNATIVE, DECLARATORY JUDGMENT: THE 2020 INVOICES ARE PRESCRIBED UNDER ANY PERIOD OF THE CODE OF COMMERCE
## (Against PRPA and Veconinter)

**131.** Cruise Plus repeats and incorporates by reference the allegations of paragraphs 1 through 130 as if fully set forth herein. This Count is pleaded in the alternative under Rule 8(d)(2) of the Federal Rules of Civil Procedure, and solely in the event the Court determines that Article 948 of the Puerto Rico Code of Commerce does not govern some or all of Defendants' claims.

**132.** Article 940 of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1902, provides that actions which, under the Code of Commerce, have no fixed term for their exercise prescribe after five years.

**133.** Eight invoices listed on the Statement bear dates in 2020: PRPA invoices M-20-202010319 and M-20-202010343, dated January 10, 2020; M-20-202010589 and M-20-202010590, dated January 16, 2020; M-20-202010839 and M-20-202010840, dated January 22, 2020; and M-20-202012891 and M-20-202012893, dated April 27, 2020.

**134.** The Statement lists, for those eight invoices, a total amount invoiced of $255,894.52, total interest of $157,371.92, and a total pending balance of $413,266.44.

**135.** Each of those eight invoices became due, and became final under Section 13.3 of the Tariff, no later than June 26, 2020. Five years from that date expired on June 26, 2025, more than one year before the filing of this Complaint.

**136.** No suit or other judicial demand, acknowledgment of the obligation, or renewal of any instrument interrupted the running of any prescriptive term as to those eight invoices.

**137.** Cruise Plus is therefore entitled, in the alternative, to a declaration that Defendants' actions to collect the eight invoices dated in 2020, and all interest, penalties, surcharges, and collection costs accessory to them, are prescribed under Article 940 of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1902, and may not be enforced against Cruise Plus.

## COUNT IV
## IN THE ALTERNATIVE, DECLARATORY JUDGMENT: DEFENDANTS' CLAIMS ARE BARRED BY LACHES
## (Against PRPA and Veconinter)

**138.** Cruise Plus repeats and incorporates by reference the allegations of paragraphs 1 through 137 as if fully set forth herein. This Count is pleaded in the alternative under Rule 8(d)(2) of the Federal Rules of Civil Procedure, and solely in the event the Court determines that the prescriptive terms of the Puerto Rico Code of Commerce do not govern Defendants' claims of their own force.

**139.** Where no statute of limitations governs a maritime claim, the timeliness of the claim is determined under the equitable doctrine of laches, and the court looks to the most analogous statute of limitations as the benchmark for measuring the delay.

**140.** The most analogous limitations period for an action to recover port dues assessed in Puerto Rico is the one-year term of Article 948(3) of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1910.

**141.** Because Defendants have not sued on any invoice listed on the Statement within the analogous one-year period, and because more than two and one-half years, and as to most of the

invoices more than four years, have elapsed since the invoice dates, Defendants' delay is presumptively inexcusable and Cruise Plus is presumptively prejudiced by it.

**142.** Defendants' delay is unreasonable and inexcusable. All of the information necessary to assert the claims, including the vessel calls, the charges assessed, and the invoices issued, has at all times been in PRPA's exclusive possession and control, and no conduct of Cruise Plus prevented or induced PRPA to delay filing suit.

**143.** Extrajudicial collection letters and statements of account, including the Statement and the eight earlier notices described above, did not require PRPA to delay suit and did not excuse its failure to sue.

**144.** Cruise Plus has been prejudiced by the delay. Interest claimed on the invoices listed on the Statement has grown to $485,470.27 as of November 4, 2026, an amount equal to more than forty-six percent of the principal invoiced.

**145.** Cruise Plus has been prejudiced in its ability to obtain reimbursement from its principals.

**146.** Cruise Plus is therefore entitled, in the alternative, to a declaration that Defendants' claims to collect the invoices listed on the Statement are barred by laches.

## PRAYER FOR RELIEF

WHEREFORE, Cruise Plus respectfully requests that the Court enter judgment in its favor and against PRPA and Veconinter:

(A) Declaring that the actions of PRPA and Veconinter to recover each of the charges listed on the Statement attached as Exhibit 1 and in Schedule A to this Complaint, whether in personam against Cruise Plus or in rem against any vessel, are prescribed under Article 948 of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1910, and may not be enforced against Cruise Plus;

(B) Declaring that all interest, penalties, surcharges, and collection costs claimed on account of those charges are likewise extinguished and may not be enforced against Cruise Plus;

(C) Declaring that any claim by PRPA or Veconinter against Cruise Plus for navigation or port dues incurred more than one year before the filing of this Complaint, and not interrupted in the manner provided by Article 941 of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1903, is prescribed;

(D) Declaring that Veconinter, whether as PRPA's agent or as its assignee, holds no greater right than PRPA to collect those charges and is bound by the declarations entered in this action;

(E) Declaring that PRPA and Veconinter may not rely on the prescribed charges as a basis for treating Cruise Plus as a delinquent account, detaining any vessel represented by Cruise Plus, denying or cancelling any docking permit requested by Cruise Plus, revoking Cruise Plus's credit privileges, demanding the replenishment of or collecting against any pledge, bond, or guarantee furnished by Cruise Plus, or undertaking any other collection measure;

(F) In the alternative to paragraph (A), declaring that Defendants' actions to collect the eight invoices dated in 2020 and listed on the Statement, and all interest, penalties, surcharges, and collection costs accessory to them, are prescribed under Article 940 of the Puerto Rico Code of Commerce, 10 L.P.R.A. § 1902;

(G) In the alternative to paragraphs (A) through (C) and (F), declaring that Defendants' claims to collect the charges listed on the Statement are barred by laches;

(H) Ordering a speedy hearing of this declaratory judgment action pursuant to Rule 57 of the Federal Rules of Civil Procedure;

(I) Granting such further necessary or proper relief based on the declaratory judgment as may be warranted under 28 U.S.C. § 2202; and

(J) Awarding Cruise Plus its costs, and granting such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico, this 10th day of November, 2026.

CASTAÑER & CÍA., P.S.C.
Capital Center Building I
239 Arterial Hostos Avenue
Suite 1201
San Juan, Puerto Rico 00918
Tel.: (787) 707-0802
Fax: (888) 227-5728
Attorneys for Plaintiff [Cruise Plus, Inc.]

s/ Alberto J. Castañer-Padró
Alberto J. Castañer-Padró
USDC-PR No. 225706
alberto@castanerlaw.com
manager@castanerlaw.com

## SCHEDULE A
## Invoices Listed on Veconinter Statement of Account (Exhibit 1) and Expiration of the One-Year Prescriptive Term Under 10 L.P.R.A. § 1910

Invoice numbers, dates, and amounts are reproduced from Exhibit 1. The "Final Under Tariff § 13.3" column adds sixty calendar days to the invoice date, which is the latest date on which any invoice could be deemed due and final under PRPA Tariff M-1-8, §§ 13.2-13.3. The "One-Year Term Expired" column adds one year to that date. Invoices marked with an asterisk (*) are the only two invoices on which the Statement reflects a payment or credit.

| No. | PRPA Invoice No. | Veconinter Doc. No. | Invoice Date | Amount Invoiced (USD) | Interest Claimed as of 11/04/2026 (USD) | Total Pending 11/04/2026 (USD) | Final Under Tariff § 13.3 (Invoice Date + 60 Days) | One-Year Term Expired |
|---|---|---|---|---|---|---|---|---|
| 1 | M-20-202010319 | W105696 | 01/10/2020 | 12,017.75 | 7,390.92 | 19,408.67 | 03/10/2020 | 03/10/2021 |
| 2 | M-20-202010343 | W105697 | 01/10/2020 | 62,738.75 | 38,584.33 | 101,323.08 | 03/10/2020 | 03/10/2021 |
| 3 | M-20-202010589 | W105698 | 01/16/2020 | 64,554.00 | 39,700.71 | 104,254.71 | 03/16/2020 | 03/16/2021 |
| 4 | M-20-202010590 | W105699 | 01/16/2020 | 52,668.75 | 32,391.28 | 85,060.03 | 03/16/2020 | 03/16/2021 |
| 5 | M-20-202010839 | W105700 | 01/22/2020 | 55,477.75 | 34,118.82 | 89,596.57 | 03/22/2020 | 03/22/2021 |
| 6 | M-20-202010840 | W105701 | 01/22/2020 | 8,294.50 | 5,101.12 | 13,395.62 | 03/22/2020 | 03/22/2021 |
| 7 | M-20-202012891 | W105702 | 04/27/2020 | 101.00 | 59.84 | 160.84 | 06/26/2020 | 06/26/2021 |
| 8 | M-20-202012893 | W105703 | 04/27/2020 | 42.02 | 24.90 | 66.92 | 06/26/2020 | 06/26/2021 |
| 9 | M-21-202120172 | W105750 | 09/29/2021 | 15,860.25 | 7,375.02 | 23,235.27 | 11/28/2021 | 11/28/2022 |
| 10 | M-21-202121694 * | W106743 | 10/12/2021 | 55,776.94 | 22,589.66 | 41,181.98 | 12/11/2021 | 12/11/2022 |
| 11 | M-21-202120878 | W105754 | 10/18/2021 | 17,861.00 | 8,171.41 | 26,032.41 | 12/17/2021 | 12/17/2022 |
| 12 | M-21-202120933 | W105755 | 12/02/2021 | 4,976.67 | 2,202.18 | 7,178.85 | 01/31/2022 | 01/31/2023 |
| 13 | M-21-202122894 | W105759 | 12/10/2021 | 7,062.25 | 3,125.05 | 10,187.30 | 02/08/2022 | 02/08/2023 |
| 14 | M-21-202122899 | W105760 | 12/10/2021 | 24,963.00 | 11,046.13 | 36,009.13 | 02/08/2022 | 02/08/2023 |
| 15 | M-21-202122883 | W105758 | 12/15/2021 | 2,237.47 | 990.08 | 3,227.55 | 02/13/2022 | 02/13/2023 |
| 16 | M-21-202121216 | W105756 | 12/21/2021 | 12,073.15 | 5,342.37 | 17,415.52 | 02/19/2022 | 02/19/2023 |
| 17 | M-22-202210222 | W105788 | 01/12/2022 | 27,745.50 | 12,069.29 | 39,814.79 | 03/13/2022 | 03/13/2023 |
| 18 | M-22-202210708 | W105789 | 02/03/2022 | 14,349.75 | 6,134.52 | 20,484.27 | 04/04/2022 | 04/04/2023 |
| 19 | M-22-202210750 | W105790 | 02/03/2022 | 14,787.00 | 6,321.44 | 21,108.44 | 04/04/2022 | 04/04/2023 |
| 20 | M-22-202210787 | W105791 | 02/03/2022 | 11,843.20 | 5,062.97 | 16,906.17 | 04/04/2022 | 04/04/2023 |
| 21 | M-22-202211100 | W105796 | 02/03/2022 | 15,833.75 | 6,768.93 | 22,602.68 | 04/04/2022 | 04/04/2023 |
| 22 | M-22-202210919 | W105792 | 02/08/2022 | 12,073.15 | 5,161.27 | 17,234.42 | 04/09/2022 | 04/09/2023 |
| 23 | M-22-202210989 | W105793 | 02/08/2022 | 4,803.50 | 2,053.50 | 6,857.00 | 04/09/2022 | 04/09/2023 |
| 24 | M-22-202210990 | W105794 | 02/08/2022 | 6,817.28 | 2,914.39 | 9,731.67 | 04/09/2022 | 04/09/2023 |
| 25 | M-22-202210991 | W105795 | 02/16/2022 | 4,083.27 | 1,745.60 | 5,828.87 | 04/17/2022 | 04/17/2023 |
| 26 | M-22-202211207 | W105797 | 02/16/2022 | 6,911.87 | 2,954.82 | 9,866.69 | 04/17/2022 | 04/17/2023 |
| 27 | M-22-202211348 | W105798 | 02/16/2022 | 12,073.15 | 5,161.27 | 17,234.42 | 04/17/2022 | 04/17/2023 |

| No. | PRPA Invoice No. | Veconinter Doc. No. | Invoice Date | Amount Invoiced (USD) | Interest Claimed as of 11/04/2026 (USD) | Total Pending 11/04/2026 (USD) | Final Under Tariff § 13.3 (Invoice Date + 60 Days) | One-Year Term Expired |
|---|---|---|---|---|---|---|---|---|
| 28 | M-22-202211565 | W105799 | 02/16/2022 | 5,922.75 | 2,531.98 | 8,454.73 | 04/17/2022 | 04/17/2023 |
| 29 | M-22-202211566 | W105800 | 02/16/2022 | 11,540.75 | 4,933.67 | 16,474.42 | 04/17/2022 | 04/17/2023 |
| 30 | M-22-202211567 | W105801 | 02/16/2022 | 14,482.25 | 6,191.16 | 20,673.41 | 04/17/2022 | 04/17/2023 |
| 31 | M-22-202211568 | W105802 | 02/16/2022 | 4,915.75 | 2,101.48 | 7,017.23 | 04/17/2022 | 04/17/2023 |
| 32 | M-22-202211569 | W105803 | 02/16/2022 | 10,123.00 | 4,327.58 | 14,450.58 | 04/17/2022 | 04/17/2023 |
| 33 | M-22-202211570 | W105804 | 02/16/2022 | 15,568.75 | 6,655.64 | 22,224.39 | 04/17/2022 | 04/17/2023 |
| 34 | M-22-202211599 | W105805 | 02/23/2022 | 3,990.60 | 1,705.98 | 5,696.58 | 04/24/2022 | 04/24/2023 |
| 35 | M-22-202211600 | W105806 | 02/23/2022 | 11,519.01 | 4,924.38 | 16,443.39 | 04/24/2022 | 04/24/2023 |
| 36 | M-22-202211603 | W105807 | 02/23/2022 | 6,911.87 | 2,954.82 | 9,866.69 | 04/24/2022 | 04/24/2023 |
| 37 | M-22-202212327 | W105808 | 03/07/2022 | 11,289.00 | 4,741.38 | 16,030.38 | 05/06/2022 | 05/06/2023 |
| 38 | M-22-202212493 | W105813 | 03/09/2022 | 7,234.50 | 3,038.49 | 10,272.99 | 05/08/2022 | 05/08/2023 |
| 39 | M-22-202212489 | W105812 | 03/11/2022 | 20,060.50 | 8,425.41 | 28,485.91 | 05/10/2022 | 05/10/2023 |
| 40 | M-22-202212639 | W105815 | 03/18/2022 | 4,803.50 | 2,017.47 | 6,820.97 | 05/17/2022 | 05/17/2023 |
| 41 | M-22-202212640 | W105816 | 03/18/2022 | 4,083.27 | 1,714.97 | 5,798.24 | 05/17/2022 | 05/17/2023 |
| 42 | M-22-202212769 | W105821 | 03/18/2022 | 12,773.00 | 5,364.66 | 18,137.66 | 05/17/2022 | 05/17/2023 |
| 43 | M-22-202212828 | W105823 | 03/18/2022 | 6,214.25 | 2,609.99 | 8,824.24 | 05/17/2022 | 05/17/2023 |
| 44 | M-22-202212641 | W105817 | 03/21/2022 | 11,519.01 | 4,837.98 | 16,356.99 | 05/20/2022 | 05/20/2023 |
| 45 | M-22-202212420 | W105809 | 03/23/2022 | 3,990.60 | 1,676.05 | 5,666.65 | 05/22/2022 | 05/22/2023 |
| 46 | M-22-202212421 | W105810 | 03/23/2022 | 11,681.11 | 4,906.07 | 16,587.18 | 05/22/2022 | 05/22/2023 |
| 47 | M-22-202212703 | W105818 | 03/23/2022 | 7,115.25 | 2,988.41 | 10,103.66 | 05/22/2022 | 05/22/2023 |
| 48 | M-22-202212733 | W105819 | 03/23/2022 | 22,167.25 | 9,310.25 | 31,477.50 | 05/22/2022 | 05/22/2023 |
| 49 | M-22-202212990 | W105826 | 03/23/2022 | 22,750.25 | 9,555.11 | 32,305.36 | 05/22/2022 | 05/22/2023 |
| 50 | M-22-202212422 | W105811 | 03/24/2022 | 6,911.87 | 2,902.99 | 9,814.86 | 05/23/2022 | 05/23/2023 |
| 51 | M-22-202212822 | W105822 | 03/24/2022 | 6,911.87 | 2,902.99 | 9,814.86 | 05/23/2022 | 05/23/2023 |
| 52 | M-22-202212861 | W105824 | 03/24/2022 | 15,078.50 | 6,332.97 | 21,411.47 | 05/23/2022 | 05/23/2023 |
| 53 | M-22-202213107 | W105830 | 03/25/2022 | 15,449.50 | 6,488.79 | 21,938.29 | 05/24/2022 | 05/24/2023 |
| 54 | M-22-202212879 | W105825 | 03/28/2022 | 6,909.80 | 2,902.12 | 9,811.92 | 05/27/2022 | 05/27/2023 |
| 55 | M-22-202213043 | W105827 | 03/28/2022 | 11,519.01 | 4,837.98 | 16,356.99 | 05/27/2022 | 05/27/2023 |
| 56 | M-22-202213244 | W105831 | 03/29/2022 | 27,374.50 | 11,497.29 | 38,871.79 | 05/28/2022 | 05/28/2023 |
| 57 | M-22-202213044 | W105828 | 04/04/2022 | 6,911.87 | 2,851.15 | 9,763.02 | 06/03/2022 | 06/03/2023 |
| 58 | M-22-202213047 | W105829 | 04/04/2022 | 3,990.60 | 1,646.12 | 5,636.72 | 06/03/2022 | 06/03/2023 |
| 59 | M-22-202213416 | W105832 | 04/04/2022 | 5,618.00 | 2,317.43 | 7,935.43 | 06/03/2022 | 06/03/2023 |
| 60 | M-22-202213420 | W105833 | 04/04/2022 | 14,972.50 | 6,176.16 | 21,148.66 | 06/03/2022 | 06/03/2023 |
| 61 | M-22-202213453 | W105834 | 04/04/2022 | 7,446.50 | 3,071.68 | 10,518.18 | 06/03/2022 | 06/03/2023 |
| 62 | M-22-202213493 | W105835 | 04/04/2022 | 15,913.25 | 6,564.22 | 22,477.47 | 06/03/2022 | 06/03/2023 |

| No. | PRPA Invoice No. | Veconinter Doc. No. | Invoice Date | Amount Invoiced (USD) | Interest Claimed as of 11/04/2026 (USD) | Total Pending 11/04/2026 (USD) | Final Under Tariff § 13.3 (Invoice Date + 60 Days) | One-Year Term Expired |
|---|---|---|---|---|---|---|---|---|
| 63 | M-22-202211611 * | W106744 | 04/19/2022 | 28,489.93 | 10,256.37 | 24,501.33 | 06/18/2022 | 06/18/2023 |
| 64 | M-22-202214138 | W105836 | 04/25/2022 | 14,190.75 | 5,853.68 | 20,044.43 | 06/24/2022 | 06/24/2023 |
| 65 | M-22-202214139 | W105837 | 05/02/2022 | 5,697.99 | 2,307.69 | 8,005.68 | 07/01/2022 | 07/01/2023 |
| 66 | M-22-202214606 | W105838 | 05/04/2022 | 13,806.50 | 5,591.63 | 19,398.13 | 07/03/2022 | 07/03/2023 |
| 67 | M-22-202214727 | W105840 | 05/16/2022 | 5,697.99 | 2,307.69 | 8,005.68 | 07/15/2022 | 07/15/2023 |
| 68 | M-22-202215018 | W105841 | 05/16/2022 | 14,455.75 | 5,854.58 | 20,310.33 | 07/15/2022 | 07/15/2023 |
| 69 | M-22-202215170 | W105842 | 05/23/2022 | 5,697.99 | 2,307.69 | 8,005.68 | 07/22/2022 | 07/22/2023 |
| 70 | M-22-202215430 | W105843 | 05/23/2022 | 16,787.75 | 6,799.04 | 23,586.79 | 07/22/2022 | 07/22/2023 |
| 71 | M-22-202216760 | W105847 | 06/28/2022 | 81.05 | 31.61 | 112.66 | 08/27/2022 | 08/27/2023 |
| 72 | M-22-202216761 | W105848 | 06/28/2022 | 81.05 | 31.61 | 112.66 | 08/27/2022 | 08/27/2023 |
| 73 | M-22-202216762 | W105849 | 06/28/2022 | 81.05 | 31.61 | 112.66 | 08/27/2022 | 08/27/2023 |
| 74 | M-23-202319987 | W105937 | 10/30/2023 | 12,394.88 | 3,346.62 | 15,741.50 | 12/29/2023 | 12/29/2024 |
| 75 | M-24-202410957 | W106132 | 02/15/2024 | 11,519.01 | 2,850.95 | 14,369.96 | 04/15/2024 | 04/15/2025 |
| 76 | M-24-202411115 | W106134 | 02/20/2024 | 22,220.25 | 5,332.86 | 27,553.11 | 04/20/2024 | 04/20/2025 |
| | **TOTAL** | | | **1,054,892.60** | **485,470.27** | **1,488,933.28** | | |